IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| CAROL A. KIRKLAND | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1-16-cv-00122 |
| | ) | |
| RAY MABUS, SECRETARY OF THE NAVY | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on a Motion for Summary Judgment by Defendant Ray Mabus, United States Secretary of the Navy ("Defendant"). Plaintiff Carol A. Kirkland ("Plaintiff"), a fifty-four year old female civilian employee with the U.S. Department of the Air Force, was supervised by Navy Captain Jane Tant during a one-year deployment in Djibouti. Plaintiff alleges that she was subjected to discrimination and retaliation on the basis of her sex, age, and a perceived disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Counts I and V); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (Count II);

and Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (Count III).

The Combined Joint Task Force-Horn of Africa ("CJTF-HOA") conducts operations on behalf of the United States Department of Defense in the Eastern African region.  Its headquarters are located in Djibouti at Camp Lemonnier. Plaintiff, an Air Force civilian employee, applied for a one-year deployment to Djibouti.  She was placed on deployment to the CJTF-HOA on November 19, 2010, where she worked as Future Operations Financial Manager.  Navy Captain Jane Tant was Plaintiff's second-level supervisor.

Plaintiff first alleges that in January 2011, shortly after Captain Tant's arrival at the CJTF-HOA, Captain Tant made comments about Plaintiff's age, such as: "I would not have hired someone as senior as you"; "We need new blood"; and "We need a fresh new look."  Plaintiff also claims that Captain Tant insinuated that because Plaintiff was a woman, her role was at home with her child, making comments such as: "Why did you come here, aren't you concerned about your child?"; and "Where is your son's father?"  Plaintiff further argues that Captain Tant discriminated against her based on a perceived disability by making what she claims were derogatory comments, such as: "Your situation directly impacts your ability"; "I'm sending you home

2

and that's final"; "You are not suitable"; and "Your condition is debilitating and long-term."

Plaintiff then points to a series of events involving Captain Tant to support her claims of discrimination and retaliation.  First, on January 27, 2011, shortly after Captain Tant's arrival at the CJTF-HOA, Plaintiff's supervisory duties were transferred to a U.S. Marine Captain.  Plaintiff complained about this change on the basis that the U.S. Marine Captain was younger, less experienced, and lower ranked than Plaintiff. Second, between February 2011 and May 2011, Plaintiff requested authorization to go on special Temporary Duty Assignments. Captain Tant did not approve Plaintiff's requests, citing unnecessary expense with undue risk for a civilian.  Plaintiff claims that every other employee in the office, including Captain Tant, was allowed such assignments.

Third, on April 11, 2011, Captain Tant issued Plaintiff a letter of caution for failing to properly follow instructions in changing her travel arrangements.  The letter was issued in response to a number of communications between Plaintiff and Captain Tant and other supervisors regarding Plaintiff's rest and recuperation leave requests.  The letter reprimanded Plaintiff for failing to obtain proper authorization for changing travel arrangements and for not obeying leave instructions.  The letter specified that it was "not an official

3

disciplinary action," and it advised that further disciplinary action could result.

Fourth, on April 20, 2011, Plaintiff received a performance review, which was based on Plaintiff's performance before and during her deployment and was completed by Plaintiff's stateside supervisor. Plaintiff contends that the review took into consideration false and derogatory information provided by Captain Tant, causing a negative effect on Plaintiff's performance rating. Plaintiff received an overall "Fully Successful" rating and was awarded a corresponding performance bonus.

In response to what Plaintiff felt was Captain Tant's unfair treatment, Plaintiff filed a formal complaint with the CJTF-HOA Inspector General against Captain Tant on April 15, 2011. She did not aver that any unfair treatment was based on a protected class status. Upon investigating the complaint, it was determined that Plaintiff's claims were unsubstantiated. Plaintiff also voiced her concerns to the chaplain at Camp Lemonnier and requested contact information for an Equal Opportunity Employment office. On April 27, 2011, Plaintiff received contact information for the EEO representative responsible for handling civilian CJTF-HOA complaints. Plaintiff claims that although she was generally aware that she could report discrimination to an EEO office, she did not know

4

the procedures or time requirements to file a complaint, and she alleges that this information was not available at the camp.

On May 24, 2011, Plaintiff received an emergency American Red Cross message stating that her home had flooded. Plaintiff was entitled to one leave request during her year-long deployment, and traveling stateside to deal with her flooded home would have been Plaintiff's third overseas trip away from Camp Lemonnier. As a result, Captain Tant recommended that the CJTF-HOA consider terminating Plaintiff's orders so that she could receive an early redeployment. The CJHT-HOA Commander—who was aware of the issues Plaintiff had with her chain of command guidance—cancelled Plaintiff's orders. On May 27, 2011, Captain Tant issued Plaintiff a Notice of Termination, effective June 3, 2011, which terminated Plaintiff's orders to the task force in Djibouti. Pursuant to the Notice of Termination, Plaintiff's deployment assignment was terminated on June 3, 2011. Upon redeployment to the United States, Plaintiff returned to the same position, title, and salary she had beforehand.

Back in the United States, Plaintiff called an Equal Employment Opportunity office to schedule an appointment on June 27, 2011. She had a meeting with an EEO counselor on July 14, 2011, and she formally commenced the EEO process on September 8, 2011. The EEOC accepted Plaintiff's complaints as timely. In response to Plaintiff's inquiries as to the status of her

complaint, Plaintiff received a letter from the EEOC in October 2014 stating that her claim had been misplaced and that the processing of her claim was inadvertently terminated. In October 2014, Plaintiff notified the Equal Employment Opportunity Commission of her intent to file a lawsuit in federal court, and the EEOC dismissed Plaintiff's case on January 16, 2015.

Plaintiff filed this action in the District of Maryland on December 30, 2014. The case was transferred to the Eastern District of Virginia on February 8, 2016. The operative complaint in this case is labeled Fourth Amended Complaint. On May 13, 2016, the Court dismissed Plaintiff's putative hostile work environment claim (Count IV) pursuant to Defendant's motion to dismiss. Following discovery, Defendant now moves for summary judgment on Count I (sex discrimination), Count II (age discrimination), Count III (discrimination based on a perceived disability), and Count V (retaliation).

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving

party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden of showing that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A plaintiff alleging violations of Title VII, the ADEA, or the Rehabilitation Act may prove her case by using either (1) direct or circumstantial evidence of discrimination; or (2) the burden-shifting approach under the *McDonnell Douglas* "pretext" framework. See Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under the *McDonnell Douglas* approach, a plaintiff must first state a prima facie case of discrimination. See Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006). If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. Id. If the defendant satisfies this showing, the plaintiff must show that the articulated reason is a pretext for discrimination. Id. at 430-31. Regardless of the approach, a plaintiff must first establish

7

that she suffered an adverse employment action. Hill, 354 F.3d at 284-85; Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993).

Additionally, employees raising Title VII, ADEA, and Rehabilitation Act claims must exhaust their available administrative remedies before pursuing an action in federal court. See Melendez v. Sebelius, 611 Fed. App'x 762, 763 (4th Cir. 2015). Exhaustion includes the requirement that federal employees initiate contact with an Equal Employment Opportunity counselor within 45 days of the date of an alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). An individual who fails to bring the complaint to the attention of an EEO counselor within the period required by the regulation may not maintain a discrimination suit against the government. See Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). As a result, only Plaintiff's timely allegations—that is, those for which she exhausted her administrative remedies—will be considered as part of Plaintiffs' claims.

Plaintiff failed to timely exhaust her administrative remedies as to all claims, except claims arising from her early redeployment effective June 3, 2011. Plaintiff's discrimination and retaliation claims span a time period from January 22, 2011 through June 3, 2011, and Plaintiff met with an EEO counselor on July 14. Accordingly, all claims based on alleged events

8

occurring prior to May 30, 2011 (45 days before Plaintiff met with an EEO counselor) are untimely. Neither voicing her concerns to the chaplain nor filing a complaint with the Inspector General satisfies the requirement that an employee initiate contact with an EEO counselor. Both actors were administrative officers with a general duty to address employee complaints about discrimination, but they were not agency officials logically connected with the EEO process. See DiPaulo v. Potter, 733 F. Supp. 2d 666, 672 (M.D.N.C. 2010) (explaining that to "initiate contact" requires that employee contact an agency official "logically connected" with the EEO process; ... exhibit an intent to begin the EEO process; and allege that an incident in question is based on discrimination). Further, although Plaintiff complained about being treated unfairly in her complaint, she did not allege discrimination based on a protected class—a requirement under EEOC regulations. See id.

   Notwithstanding that the EEO process shall be extended in certain circumstances, see 29 C.F.R. § 1614.105(a)(2), Plaintiff is not entitled to such an extension. Plaintiff received contact information for the EEO representative responsible for handling civilian CJTF-HOA complaints on April 27, 2011. Although she could have asked questions about the EEO process and timing deadlines, she did not meet with an EEO counselor until July 14, 2011, failing to exercise due diligence in

9

pursuing her claims. As a result of Plaintiff's failure to timely exhaust her administrative remedies, all of her claims other than those arising from her early redeployment are time-barred.

Even if Plaintiff had properly exhausted her administrative remedies, none of Plaintiff's claims except for the early redeployment constitute an "adverse employment action." See Hill, 354 F.3d at 284-85. An adverse employment action is one that "adversely affects the terms, conditions, or benefits of the plaintiff's employment," such that the employee suffers "some significant detrimental effect" from the action in question. Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). Here, Plaintiff's removal of supervisory duties and the denial of temporary duty assignments did not affect Plaintiff's salary, title, or benefits. Furthermore, it was in Plaintiff's supervisor's authority and discretion to reassign supervisory duties and to assign supplemental assignments to an employee's responsibilities. Similarly, the letter of caution warned Plaintiff that discipline could follow if she failed to follow instructions; it did not create an adverse result. Likewise, Plaintiff's performance feedback was not an adverse action because she received a "Fully Successful" rating that entitled her to a performance bonus. As a result, only

Plaintiff's early redeployment constitutes an adverse employment action.

The Court now turns to Plaintiff's timely and actionable allegation: specifically, Plaintiff's early redeployment to the United States.  In Count I of her Complaint, Plaintiff asserts a claim of sex discrimination in violation of Title VII of the Civil Rights Act of 1964.  In Count II, Plaintiff asserts a claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967.  Plaintiff's claims of sex and age discrimination fail under both the direct or circumstantial evidence approach and under the *McDonnell Douglas* approach.  To survive summary judgment on the basis of direct and indirect evidence, Plaintiff must produce evidence that "clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between the negative attitude and the employment action."  Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 2009), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  Plaintiff fails to meet this standard.

Plaintiff points to comments made by Captain Tant regarding Plaintiff's child care arrangements as evidence of sex discrimination and age-related comments related to Plaintiff's evidence of age discrimination.  However, Plaintiff fails to connect these comments with her early redeployment.  Rather,

Plaintiff alleges that the remarks were made throughout her deployment, beginning with Captain Tant's arrival to Camp Lemonnier. Without an evidentiary connection to an adverse employment action, an employer's comments do not support an inference of discriminatory animus. See Dockins v. Benchmark Communications, 176 F.3d 745, 749 (1990). Isolated and ambiguous comments without a nexus to an adverse employment decision made by an employer cannot be evidence of a discriminatory discharge. See O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-49 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996). Given that Plaintiff's evidence of Captain Tant's comments lack a sufficient connection to the decision to redeploy Plaintiff to the United States, the comments do not support an inference of discriminatory animus.

Proceeding under the *McDonnell Douglas* approach, Plaintiff fails to establish prima facie claims of sex and age discrimination. To establish a prima facie claim of sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) that similarly situated employees outside her class received more favorable treatment. Gerner v. Cty. of Chesterfield, 674 F.3d 264, 266 (4th Cir. 2012). To establish an age discrimination claim, Plaintiff must show that: (1) she was

older than 40; (2) she was discharged; (3) she was qualified for the job and met the defendant's legitimate expectations; and (4) her position remained open or was filled by a similarly qualified individual who was substantially younger. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006). A plaintiff suing under the ADEA must show that "but for" age discrimination, the adverse employment action would not have occurred. See Gross v. FBL Fin. Servs. Ins., 557 U.S. 167, 176 (2009).

For her sex discrimination claim, Plaintiff fails to present any valid comparator evidence showing similarly situated employees were treated more favorably. As an example, Plaintiff points to Captain Tant's refusal to allow Plaintiff to go on temporary duty assignments while other employees conducted such assignments. She also alleges that Captain Tant did not make the same type of remarks to a male commander in the same pay grade. However, these allegations are unconnected to the Defendant's decision to terminate Plaintiff's deployment early. Thus, Plaintiff's sex discrimination claim fails because she has not shown that similarly-situated employees outside her protected class were treated differently. In regards to age discrimination, Plaintiff has not proven that her early redeployment would not have occurred but for her age. See Gross, 557 U.S. at 176 (2009). Rather, Defendant redeployed

13

Plaintiff because she failed to follow instructions regarding leave. Thus, Plaintiff's age discrimination claim also fails.

Alternatively, Defendant's legitimate, nondiscriminatory reasons for Plaintiff's early redeployment satisfy the burden of persuasion in the *McDonnell Douglas* framework and shift the burden back to Plaintiff to prove that the Navy's proffered reason was not the true reason for her redeployment but a mere pretext for discrimination. Defendant has articulated legitimate reasons for the redeployment: Plaintiff did not follow instructions and failed to obey her chain of command. Failure to follow instructions is a legitimate reason for termination. See, e.g., Holmes v. West, 210 F.3d 361 (4th Cir. 2000). As a result, Captain Tant's recommendation for an early redeployment is reasonable. Plaintiff has not shown how Defendant's conduct amounted to sex or age discrimination beyond her own conclusory inference and has not shown that the legitimate, nondiscriminatory reason for her redeployment was a mere pretext for discrimination. Thus, Plaintiff's sex and age discrimination claims fail, and Defendant is entitled to summary judgment on Count I and Count II.

In Count III, Plaintiff asserts a claim of discrimination based on a perceived disability in violation of Section 501 of the Rehabilitation Act of 1973. To state a claim of disability discrimination under Section 501, a plaintiff must plead that:

14

(1) she is an individual with a disability within the statute's definition; (2) that she is qualified for the position; and (3) that she suffered an adverse employment action that was motivated by her disability status. <u>Doe v. Univ. of Maryland Med. Sys. Corp.</u>, 50 F.3d 1261, 1265 (4th Cir. 1995). A plaintiff has a qualifying disability for purposes of satisfying the first element if she (i) has a physical or mental impairment that substantially limits a major life activity; (ii) has a record of such an impairment; or (iii) is regarded or perceived as having such an impairment. <u>See</u> 42 U.S.C. § 12102; 29 U.S.C. §705(9)(B); 29 C.F.R. § 1630.2(g). An individual meets the "regarded as" requirement if she establishes that she was subject to an adverse employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(2)(A).

Plaintiff argues that in the days following the news of her home flooding, Captain Tant made comments on her suitability and perceived impairment—specifically, "You're in no shape to perform your duties; you're impaired"; "Your situation directly impacts your ability, I'm sending you home and that's final"; and "You're not suitable." She claims that these remarks show that Captain Tant perceived Plaintiff as having a long-term anxiety disorder. However, these statements do not provide

15

evidence that the Navy believed Kirkland had a disability. If anything, they indicate that the Navy believed Plaintiff was distracted by her house flooding—a condition that does not constitute a qualifying disability under the Rehabilitation Act. Plaintiff's "condition" was transitory or minor in nature and was not a physical or mental impairment. See 42 U.S.C. § 12102(3)(B). Plaintiff has not presented evidence showing that the Navy believed Plaintiff had a long-term anxiety disorder. Merely alleging that her employer perceived her to be impaired is insufficient to state a case of disability discrimination, and such conclusory allegations are insufficient to survive summary judgment. As a result, Plaintiff's claim of discrimination based on a perceived disability fails, and Defendant is entitled to summary judgment on Count III.

In Count V of her Complaint, Plaintiff alleges that her orders were terminated and that she was sent home on early redeployment in retaliation for her complaints to the Inspector General and others at Camp Lemonnier about Captain Tant's treatment. Even though Plaintiff has not established a prima facie case of discrimination on the basis of sex, age, or a perceived disability, it would still be unlawful for the Navy to retaliate against her for filing a complaint against her supervisor. To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity;

16

(2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the employment action. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010). Although status-based discrimination claims (such as sex discrimination) only require that unlawful discrimination be a "motivating factor" for an employer's actions, retaliation claims are subject to a higher "but for" causation standard under which Plaintiff must show that the causal link between her protected activity and her removal is so close that the removal would not have occurred but for the protected activity. See Nassar, 133 S.Ct. 2517, 2533 (2013).

Plaintiff fails to establish a prima facie case for retaliation because there is no causal connection between the protected activity and the CJHT-HOA Commander's decision to cancel Plaintiff's orders and redeploy her. A fortiori, she has not met the higher "but for" standard of causation required by the Supreme Court in Nassar. As already explained, the Navy has provided a legitimate reason for Plaintiff's early redeployment—that she failed to follow instructions from her chain of command. The evidence presented is insufficient to show that the early redeployment would not have occurred but for Plaintiff filing a complaint with the Inspector General or complaining about Captain Tant's treatment to others at the CJTF-HOA. Thus,

17

Plaintiff's retaliation claim fails, and Defendant is entitled to summary judgment on Count V.

For the aforementioned reasons, this Court finds that summary judgment should be granted in favor of the Defendant on Counts I, II, III, and V. An appropriate order shall issue.

/s/ Claude M. Hilton

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia

September 12, 2016